IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CR-551-GKF |
| | ) |
| NOE ALEJANDRO SANDOVAL HERRERA, | ) |
| | ) |
| Defendant. | ) |

### OPINON AND ORDER

Before the Court is Defendant's Motion for Client Transfer to New Facility or for Client to be Brought to Marshal's Holdover for Attorney Client Visits (ECF No. 34), which was referred by United States District Judge Gregory Frizzell. The motion includes exhibits but no affidavit or other sworn testimony. The United States filed a response (ECF No. 36), which is supported by the affidavit of Deputy United States Marshal Story Schankel ("Schankel"). Defendant did not seek leave to file a reply brief or request an evidentiary hearing. The Court finds that an evidentiary hearing is not needed to resolve the instant motion. For reasons explained below, the motion is DENIED.

**I.     Factual Background**

On December 20, 2021, Defendant was charged by Indictment with unlawful reentry of removed alien. On September 16, 2024, the district judge signed a writ of habeas corpus ad prosequendum requiring Defendant to be delivered to federal custody from a correctional facility in Hinton, Oklahoma. Defendant was arraigned on the Indictment and consented to an order of detention pending trial. On October 21, 2024, Defendant entered a plea of guilty to the crime of unlawful reentry of removed alien and is currently awaiting sentencing. Neither Defendant nor

his counsel raised issues with access to counsel during the change of plea hearing.[1] Sentencing is scheduled for January 13, 2024.

Throughout his period of pretrial detention in this case, Defendant has been held at Cimarron Correctional Facility in Cushing, Oklahoma ("Cimarron"). Cimarron is in a rural area near Cushing, Oklahoma. *See* ECF No. 34 at Attachment 1 (Google Maps photos of facility). Cimarron is approximately fifty miles from the two federal courthouses in Tulsa, Oklahoma. The United States Marshal for the Northern District of Oklahoma ("Marshal") uses Cimarron for the temporary housing of federal prisoners. ECF No. 36-1 at ¶ 5 (Schankel affidavit). Cimarron is operated by a private company known as Core Civic. *Id.* Core Civic contracts with the City of Cushing, Oklahoma, and the Marshal "is able to work with Cushing for temporary housing of federal prisoners." *Id.* Cimarron is known as a "pass through" facility which does not permanently house federal prisoners. *Id.* The Marshal "has obtained waivers from a 2021 Executive Order eliminating the use of privately operated criminal detention facilities such that federal prisoners may be detained pending trial and sentencing in institutions operated by private companies." *Id.*

Defendant has been represented by Jason Perkins ("Perkins"), a member of the Criminal Justice Act Panel for the Northern and Eastern Districts of Oklahoma, throughout his criminal case. On October 17, 2024, November 13, 2024, and November 26, 2024, Perkins attempted to visit Defendant at Cimarron but was denied entry on all occasions.

The basic facts surrounding these attempted visits are consistent between Defendant's brief and Schankel's affidavit. On October 17, 2024, Cimarron officials stated their intent to conduct a search of Perkins' vehicle as a condition to entering the premises, which included a K9 sniff of the vehicle. Perkins refused the vehicle search and was denied entry. On November 13, 2024, Perkins

---

[1] The Court listened to the audio recording of the change of plea hearing.

had another individual drive him to the facility, with the intention that the vehicle would enter the premises, drop Perkins off, and then leave the premises. Cimarron officials stated their intent to conduct a search of this vehicle as a condition to entering the premises, including a K9 sniff of the vehicle. Perkins refused the vehicle search and was denied entry. On November 26, 2024, Perkins was dropped off outside the facility on a public road and entered by foot on or around 5:13 pm. He was permitted to enter the facility and was subjected to a K9 search of his person. Although he cleared the search, he was still denied entry. Perkins does not know why he was denied entry on the third occasion. According to Schankel, Perkins was denied entry on this occasion because he arrived after proper visiting hours and failed to notify the facility in advance. *See* ECF No. 36-1 at ¶ 9 ("Although Perkins cleared the search, the duty officer directed the shift supervisor to advise Perkins that the facility could not accommodate his visit that late in the day without notification.").

Cimarron has a general policy of conducting "K9 vehicle searches on randomly selected days," and "there is signage near the entrance of the facility stating that vehicles are subject to search." ECF No. 36-1 at ¶ 6. The vehicle searches "consist of walking a K9 dog around a vehicle." *Id.* If the K9 does not alert, the vehicle may enter; if the K9 does alert, officials would conduct a more thorough search. *Id.* Prison officials were conducting K9 vehicle searches of all visitors and staff on October 17, 2024, and November 13, 2024. *Id.* at ¶ 7, 8.

Cimarron has accommodated Perkins' requests to meet with clients on several occasions "when he has shown up on a weekend without any schedule[d] appointment or prior notice." *Id.* at ¶ 10. On October 27, 2024, before the third denial of entry, Cimarron Assistant Chief Kimberly Sullivan ("Sullivan"), who is a Core Civic employee, discussed the visitation process with Perkins. She provided him with her contact information in case he had an emergent need to meet a client, and explained that staff may not be present to accommodate visitation if he arrives on weekends

3

or after hours without prior notice. *Id.* Sullivan made efforts to permit Perkins to make after-hours and same-day requested visits to clients on October 28, 2024, through a Zoom visit, and on October 30, 2024, through an in-person visit.[2]

## II.    Analysis

In the current motion, Defendant requests that the Court order the Marshal to transfer him to a different facility or transport him to the federal courthouse in Tulsa for future attorney/client visits. Defendant argues that transfer or other accommodations are necessary because Cimarron officials are unconstitutionally interfering with his Sixth Amendment right to counsel by imposing unjustifiable and/or unconstitutional restrictions on Perkins' entry to the facility. *See* ECF No. 34 at 1 (arguing that warden of Cimarron is circumventing Defendant's right to counsel and the Court's order appointing Perkins as counsel). Specifically, Defendant argues that Perkins has been unfairly denied entry into the facility for "refusing a warrantless and 'reasonable suspicion' free search." *Id.* at 2.

The Marshal is responsible for housing federal prisoners pending commitment to an institution for the service of a sentence. *See* 18 U.S.C. § 4086 ("United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution."); 28 C.F.R. § 0.111(k) (describing one of general functions of United States Marshal's Service Director as "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence . . . ."). The Marshal has "broad authority to determine where to house its

---

[2]  The record is not clear as to whether Perkins visited Defendant or other clients on these days.

prisoners." *United States v. Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *3 (W.D. Mo. Dec. 30, 2015) (citation omitted).

A criminal trial judge may properly consider whether a pretrial detainee's conditions of confinement are impairing his Sixth Amendment right to counsel and, if necessary, order the Marshal to take necessary actions to protect that right. *See United States v. Folse*, No. CR 15-2485 JB, 2016 WL 3996386, at *14-19 (D.N.M. June 15, 2016) (addressing pretrial detainee's challenge to those conditions of confinement that potentially impaired his Sixth Amendment rights, based on exception to general rule that federal prisoners must challenge conditions of confinement in a civil action against U.S. Marshal). *Cf. United States v. Sullivan*, No. 22-CR-127-JFH, 2022 WL 2374374, at *1 (N.D. Okla. June 30, 2022) (denying criminal defendant's motion to transfer based on general rule that the "Marshal is responsible for Defendant's safe-keeping," and reasoning that "Defendant [] cited no authority to support her request that the Court assume control of the conditions of her confinement"). Therefore, the Court will consider whether court intervention is necessary to protect Defendant's Sixth Amendment rights.[3]

The Sixth Amendment guarantees anyone accused of a crime the right to have the assistance of counsel for his defense. U.S. Const. amend. VI. Inmates must have a "reasonable opportunity" to seek and receive the assistance of counsel, and any "regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Folse*, 2016 WL 3996386, at *19 (cleaned up).

---

[3] In the motion, Defendant briefly mentions "issues with the status" of Cimarron, appearing to question the Marshal's ability to house federal detainees there. ECF No. 34 at 4. The United States did not directly respond to this argument but provided facts regarding Cimarron's status in Schankel's affidavit. *See* ECF No. 36-1 at ¶ 5. The Court declines to address any "status" issues in resolving the motion. The argument is inadequately developed, and the issue would appear to fall outside the limited exception for addressing conditions of confinement that impair Sixth Amendment rights.

5

Cimarron has not unjustifiably obstructed Defendant's access to counsel by enforcing its vehicle search policy against Perkins on two occasions and enforcing a visitation policy against Perkins on one occasion. Regarding the first two denials of entry, occurring on October 17, 2024, and November 13, 2024, Cimarron's actions of refusing entry upon Perkins' refusal of a vehicle search are consistent with Tenth Circuit law and federal regulations. In *Romo v. Champion*, 46 F.3d 1013, 1017-19 (10th Cir. 1995), the court addressed the constitutionality of a vehicle stop and search conducted at a roadblock outside the entrance of an Oklahoma correctional facility. The court began by noting it would "largely defer to the judgment of prison administrators in matters of institutional security," and that "prison administrators' responsibility for maintaining security includes the duty to intercept and exclude by all reasonable means all contraband smuggled into the facility." *Id.* at 1015-16 (cleaned up). The court addressed the search conducted at the roadblock, including the K9 sniff of the vehicle and persons in the vehicle. The court expressly rejected the visitors' argument that, due to prison officials' lack of individualized reasonable suspicion, the search was per se unreasonable. *Id.* at 1018-19. Instead, the court applied a balancing test and found that the government's "special need" in prison security and preventing the entry of contraband outweighed the visitors' privacy interests, which were significantly diminished when attempting to visit a prison. *Id.* at 1017-18.

Here, Cimarron's challenged policy authorizes vehicle searches that are similar to the search addressed in *Romo*. The policy authorizes a brief detention and vehicle search by a K9, on randomly selected days, as a condition to all visitors and staff entering the premises. The searches refused by Perkins were being conducted as a condition to entry of a prison, which presents an exception to the general requirements of reasonable suspicion or probable cause. As in *Romo*, the government has a "special need" apart from general law enforcement in maintaining security, and prison visitors have a reduced expectation of privacy. Defendant has not cited any case law

6

indicating Cimarron has a reduced security interest in searching a criminal defense lawyer's vehicle,[4] or in searching a vehicle that enters but will not remain on the premises. Cimarron's vehicle search policy, as described in sworn testimony, is consistent with Tenth Circuit law.

Cimarron's actions are also consistent with federal regulations governing the Bureau of Prisons, which provide that staff "may search you and your belongings (for example, bags, boxes, vehicles, containers in vehicles, jackets or coats, etc.) before entering, or while inside, any Bureau facilities or Bureau grounds, to keep out prohibited objects." 28 C.F.R. § 511.13. The regulations provide that searches may be conducted randomly or based on reasonable suspicion. 28 C.F.R. § 511.15. If random, the search "must be impartial and not discriminate among non-inmates on the basis of age, race, religion, national origin, or sex." 28 C.F.R. § 511.15(a)(1). A non-inmate may be denied entry or required to leave if he refuses to be searched or if there is reasonable suspicion of engagement in prohibited activity. 28 C.F.R. § 511.17(a)-(b). Accordingly, Cimarron's action of refusing Perkins entry, upon his refusal to submit to vehicle searches required for visitors and staff on those days, is consistent with federal regulations.

Defendant's reliance on *Boren v. Deland*, 958 F.2d 987, 988 (10th Cir. 1992), is misplaced. In *Boren*, the court held that a strip search conducted by prison officials of a prison visitor required reasonable suspicion. The court in *Boren* stated that "[p]rison visitors do not abandon their constitutional rights when they enter a penitentiary." *Id.* at 988. However, the *Romo* court distinguished *Boren*, reasoning that a "strip search is a far cry from the routine, rather nonintrusive search initially conducted by defendants at the roadblock." *Romo*, 46 F.3d at 1019. The *Romo* court also held that requiring reasonable suspicion for a strip search "is not inconsistent with our holding today that the routine preliminary search of plaintiffs and their vehicle, although executed

---

[4] The Court is not aware of any other criminal defense lawyers refusing vehicle searches at Cimarron.

without individualized suspicion, was reasonable." *Id.* The search policy at issue closely aligns with the facts presented in *Romo*, and *Boren* is inapposite.[5]

Regarding the third denial of entry, occurring on November 26, 2024, Shankel provided sworn testimony that Perkins was denied entry because the facility could not accommodate his after-hours visit without prior notification. The Court gives significant deference "to the judgment of prison administrators in matters of institutional security," *Romo*, 46 F.3d at 1015 (citation omitted), including any after-hours visitation policies. Prior to this visit, Sullivan informed Perkins of the need for pre-notification for weekend or after-hours visits and gave him her personal number to arrange such visits. Sullivan accommodated Perkins' requests for after-hours or weekend visitation on other occasions prior to the November 26, 2024, visit. Defendant failed to show that the third refusal of entry was an unconstitutional or unjustified interference with access to counsel.

In sum, Cimarron's vehicle search policy is not an ongoing, per se violation of the Fourth Amendment, and Cimarron officials did not unconstitutionally or unjustifiably interfere with Defendant's access to counsel on any of three challenged occasions. There was "interference" with Defendant's ability to see his lawyer because Perkins elected to refuse vehicle searches and/or attempted an after-hours visit without notification. However, any such interference was justified based on prison security interests or prison rules. Further, if Perkins elects to refuse vehicle searches in the future, he may access the premises on foot, as he did on the third occasion. He

---

[5] In addition to challenging Cimarron's vehicle search policy, Defendant raises concerns that K9s at Cimarron are insufficiently trained regarding electronics. ECF No. 34 at 4-6. These concerns are not supported by any sworn testimony and are unclear to the Court. Prison officials have a security interest in seeking out electronic devices entering prison grounds and preventing contraband electronics from being passed to prisoners. Further, Perkins is not being meaningfully denied access to his client even if he refuses a K9 vehicle search. As explained below, there are other means of meeting with his client, including remote meetings or entering the premises on foot. The Court finds no need to conduct further inquiry on Cimarron's K9 training to resolve the motion.

may also request remote client meetings, which Cimarron has provided Perkins in the past. Defendant failed to demonstrate that Cimarron unconstitutionally or unjustifiably impaired Defendant's right of access to counsel, or that Cimarron will continue to do so pending his sentencing. *See Folse*, 2016 WL 3996386, at *20 (denying defendant's motion to transfer, where court found prison's laptop restrictions did not "unconstitutionally impair [defendant's] right of access to counsel"). *See generally United States v. Jones*, 808 F.2d 561, 570 (7th Cir. 1986) (explaining that not every restriction on time or opportunity to consult with counsel violates Sixth Amendment).

### III. Conclusion

Defendant's Motion for Client Transfer to New Facility or for Client to be Brought to Marshal's Holdover for Attorney Client Visits (ECF No. 34) is DENIED.

DATED this 3rd day of January, 2025.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**